UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| In re JOHN DAVID SMITH and MARY HILL SMITH, | ) ) ) | Case No. 09-61696-LYN |
| Debtors. | ) ) | |

## MEMORANDUM

This matter comes before the court on a motion by the United States trustee to dismiss this case under 11 U.S.C. § 707(b) as an abuse of the provisions of chapter 7 of the Bankruptcy Code. John David Smith and Mary Hill Smith ("the Debtors") oppose the motion. The motion will be denied.

*Jurisdiction*

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52 which is made applicable in this contested matter by Fed. R. Bankr. P. 9014(c) and 7052.

*Facts*

On May 28, 2009, the Debtors filed the instant chapter 7 petition. The Debtors own real property in Forest, Virginia ("the Real Property"). The Real Property is valued at $167,000.00 on the Debtors' schedules and secures a debt in the amount of $191,992.50.[1] The Debtors scheduled no priority unsecured claims and scheduled general unsecured claims in the amount of $158,696.58, including $63,226.18 in student loans.[2]

On Schedule I, the Debtors scheduled monthly gross income in the amount of $1,297.83 for Mrs. Smith and $5,215.00 for Mr. Smith.[3] The Debtors' combined monthly gross income is $6,512.83. The Debtors scheduled net monthly income from their employment in the total amount of $4,914.63.[4] They scheduled monthly expenses in the amount of $5,147.00.[5] Their monthly net income, as scheduled, is negative $232.37. The parties agree that the Debtors are above-median income debtors. The Debtors have no dependents.

The Debtors also filed a Chapter 7 Statement of Current Monthly Income and Means-

---

[1] See Debtor's Schedule A.

[2] See Debtors' Schedules E & F.

[3] See Debtors' Schedule I.

[4] See Debtors' Schedule I.

[5] See Debtors' Schedule J.

Test Calculation Form ("Form 22A"). On Form 22A, the Debtors indicated that the total family Current Monthly Income ("CMI")[6], as defined by the Bankruptcy Code, was $6,561.08.

The Debtors also scheduled family monthly deductions for certain expenses and deductions for debt payments as is permitted on Form 22A by 11 U.S.C. § 707(b)(2). They scheduled deductions based on IRS National Standards (food, clothing, household supplies, personal care, and miscellaneous) in the amount of $1,105.00. The Debtors also scheduled deductions based on IRS Local Standards (housing mortgage and non-mortgage expenses, and transportation expenses) in the amount of $1,748.00 including two car payments in the amount of $489.00 each.[7] Under "Other Necessary Expenses", the Debtors deducted payroll taxes in the amount of $1,337.48. All of the deductions in this paragraph total $4,190.48.

The Debtors deducted $168.45 for health insurance and $50.00 for charitable contributions. The Debtors deducted $1,164.00 on their first mortgage and $1,157.00 for their second mortgage on the Real Property. Finally, they deducted $44.16 for payments that they would have to pay a chapter 13 trustee if this case were a case in chapter 13. The Debtors' deductions on Form 22A totaled $6,852.09. Their monthly disposable income under the chapter 7 Means Test on Form 22A as filed is calculated at negative $281.01.

On October 10, 2009, the United States trustee filed a motion to dismiss this case for abuse under 11 U.S.C. § 707(b)(3)(B).

---

[6] CMI is defined as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived during the 6-month period" preceding the month of the bankruptcy filing. 11 U.S.C. § 101(10A).

[7] The Debtors scheduled five vehicles, the newest of which is thirteen years old. Mr. Smith testified that they are in such disrepair that he keeps the five in order to assure that the Debtors have at least two that are operable at any given time. The chapter 7 trustee did not find it feasible to sell any of the vehicles for the benefit of creditors, as evidenced by the fact that he filed a report of no assets in this case.

3

*Discussion.*

I.

The United States trustee brings this motion on the grounds that it would be an abuse of chapter 7 to permit the Debtors to continue prosecuting this case under that chapter. A case under chapter 7 may be dismissed for abuse. See 11 U.S.C. § 707(b) as revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[8] Whether the prosecution of a chapter 7 case against an above-median income debtor constitutes abuse is determined under Sections 707(b)(1), (2) and (3).

Section 707(b)(1)[9] provides that a court may dismiss an individual case under chapter 7 if (1) the debtor's debts are primarily consumer debts and (2) it would be an abuse of the provisions of chapter 7 of the Bankruptcy Code to grant relief to the debtor. There is no dispute that the Debtors' debts are consumer debts.

Section 707(b)(2) provides that abuse is presumed if a debtor's net monthly income exceeds a certain threshold amount as determined by a statutory mathematical test ("the Means Test). The Debtor's Means Test (Form B22A as filed) calculates the Debtors' monthly disposable income under Section 707(b)(2) at negative $281.01. The United States trustee,

---

[8] Section 707(b) was revised and became effective on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See Pub. L. No. 109-8, 119 Stat. 23 (2005).

[9] Section 707(b) (1) provides:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

however, objects to certain deductions.

Section 707(b)(3) provides that, if the presumption in Section 707(b)(2) does not arise or is rebutted, the court shall consider "(A) whether the debtor filed the petition in good faith; or (B) [whether] the totality of the circumstances . . . of the debtor's financial condition demonstrates abuse." The first of these two separate and independent[10] tests is referred to herein as the Good Faith Test; the second is referred to herein as the Financial Situation Test. The United States trustee asserts that the totality of the Debtors' financial circumstances indicate that it would be an abuse of chapter 7 to permit them to continued under chapter 7.

Under the pre-BAPCPA law, the burden of production and the burden of persuasion in a motion to dismiss under Section 707(b) rested with the moving party. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)). Collier concluded under pre-BAPCPA law that the burden was heighten because the former Code provided that "the court should give the benefit of any doubt to the debtor." Collier, supra. That language, however, has been removed from the Code. While the burden of proof is no longer heightened, the United States trustee must still meet the burden of production and the burden of persuasion by a preponderance of the evidence.

As a preliminary matter, it should be noted that the following analysis under the Means Test and the Financial Circumstance Test does not allow the Debtors to deduct expenses for

---

[10] The fact that "bad faith" and the "totality of financial circumstances" are listed in the disjunctive is very strong evidence that Congress intended that bad faith and the totality of the debtor's financial circumstances constitute independent grounds for relief. See Eugene W. Wedoff, Means Testing in the New 707(b), 79 Am. Bankr. L.J. 231 (2005). A bankruptcy court may dismiss a case if it finds that the debtor filed the petition in bad faith, *or* that the totality of the circumstances of the debtor's financial situation demonstrates abuse. Each of the two considerations is potentially sufficient for a finding of abuse. The debtor's financial situation must, therefore, have some separate implication in the context of abuse apart from considerations of bad faith for all debtors and considerations of the means test in Section 707(b)(2) for above-median debtors.

payments on student loans.

## II.

Under Section 707(b)(2), if a debtor's disposable income as determined by the Means Test, multiplied by 60, is greater than $10,950.00, then it is presumed that it would be an abuse of the provisions of chapter 7 to permit that debtor to proceed under that chapter. The Debtors' Means Test indicates that they have negative $281.01 in monthly disposable income.

The United States trustee, however, disputes the Debtors' calculation of their disposable income. The United States trustee asserts that the Debtors' "current monthly income", as defined at 11 U.S.C. § 101(10A), is $6,561.08, not $6,512.83. The United States trustee also argues that the Debtors' Ownership Expenses for two vehicles should be reduced from $978.00 to $00.00, and that the Debtors' payroll deductions should be increased from $1,318.48 to $1,337.48. The United States trustee calculates that the Debtors' monthly disposable income under the Means Test is $639.15.

It is only necessary to examine one of the reductions asserted by the United States trustee in order to conclude that the Debtors' Means Test disposable income is negative. The United States trustee asserts that the Debtors should not be permitted to deduct the IRS Local Standard allowance for two vehicle payments of $489.00 each because the Debtors make no actual payments on the two vehicles that they own. This Court, however, agrees with the rationale and holding in In re Hylton, 374 B.R. 579 (Bankr. W.D. Va. 2007) (Krumm, C.J.), in which the Court held that the debtors were entitled to deduct the full amount of the allowance for vehicle payments even if they owned the vehicle free and clear of any liens. The $978.00 for the two payments will be deducted from the disposable income as calculated by the United States trustee.

If one subtracts $978.00 from $639.15 (the amount of the Debtors' disposable income as asserted by the United States trustee), the Debtors' monthly disposable income under the Means Test is calculated to be negative $338.85, which is less than the required statutory minimum of $182.50 ( = $10,950.00/60). Accordingly, it is concluded that it would not be an abuse for the Debtors to continue to prosecute this case under chapter 7 based on 11 U.S.C. § 707(b)(2).

III.

If a motion is brought under 11 U.S.C. § 707(b)(3)(B), the Court must consider the totality of the circumstances of the debtor's financial situation. This Court has previously held that a finding that a debtor can fund a chapter 13 plan may be sufficient, without more, to support a conclusion that granting relief would be an abuse of the provisions of chapter 7. This Court has also held that under the Financial Situation Test, whether a debtor has sufficient disposable income to fund a Chapter 13 Plan is to be determined as if the debtor were a debtor under Chapter 13.

Under Chapter 13, an above-median income debtor must pay all of his or her projected disposable income to the trustee for five years. See 11 U.S.C. § 1325(b)(1)-(3)[11]. "Projected

---

[11] Section 1325(b)(1)-(3) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
    (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
    (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

disposable income" is not defined in the Bankruptcy Code.  "Disposable income" means the "current monthly income" received by the debtor less "amounts reasonably necessary to be expended for support" of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2)[12]. "Current monthly income" is defined as the "average monthly income . . . that the debtor receives . . . during the 6-month period ending on the last day of the calendar month immediately preceding the date" of petition.  11 U.S.C. § 101(10A)[13].  The "amounts reasonable necessary to be expended for support" under Subsection 1325(b)(2) are to be determined in accordance with 11 U.S.C. § 707(b)(2)(A)&(B) if the debtor's "current monthly income", when multiplied times

---

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

[12]    A debtor is also allowed deductions for post-petition domestic support obligations, charitable contributions, and business expenses.   See Subparagraphs 1325(b)(2)(A)&(B).  Those deductions are not relevant to this discussion.

[13]    Section 101(10A) provides

The term "current monthly income"--

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--

(I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

8

twelve, is greater than the median annual income for a family of similar size in the debtor's state, which is true in this case. 11 U.S.C. § 1325(b)(3).

To summarize, all of a debtor's "projected disposable income" to be received during the pendency of the plan must be applied to make payments to the unsecured creditors. "Disposable income" means a debtor's "current monthly income" less "amounts reasonably necessary to be expended for support" of the debtor and any dependents. The word "projected" in the phrase "projected disposable income" modifies each of the component parts of "disposable income", that is, it modifies "current monthly income" and it modifies "amounts reasonably necessary to be expended for support". "Projected disposable income", then, means the "projected current monthly income" less "projected amounts reasonably necessary to be expended for support" where "reasonably necessary to be expended for support" is to be determined in accordance with Subparagraphs 707(b)(2)(A)&(B).

A. The Debtors' Projected Income.[14]

The Debtors' income for purposes of the chapter 13 disposable income test is their projected current monthly income. For purposes of this motion, the Court accepts the assertion of the United States trustee that the Debtors' monthly disposable income is $6,538.29.

B.    The Debtors' Projected Expenses (Deductions).

The amount of deductions that are "reasonably necessary to be expended for support" is to be determined in accordance with Section 707(b)(2)(A)&(B). The deductions in Section 707(b)(2)(A) may be divided into five groups: (1) IRS Local and National Standards; (2)

---

[14]    Addendum A, attached hereto, contains a summary of the amounts determined herein on a table that is substantially in the form of Form 22A.

IRS Other Necessary Expenses; (3) Additional Statutory Expenses; (4) Payments toward secured debt; and (5) Payments toward priority claims.

    1.    IRS National and Local Standards.

Debtors may deduct the statutory monthly expense amounts specified under the IRS National Standards and Local Standards. 11 U.S.C. § 707b)(2)(A)(ii)(I). Courts have interpreted this provision in a number of different ways using at least seven different rationales.[15] Some have held that the amounts provided are maxima that a debtor may deduct.[16] Others have held that debtors are entitled to the full amount of the deduction.[17]

As noted above, this Court agrees with the rationale and holding in In re Hylton, 374 B.R. 579 (Bankr. W.D. Va. 2007) (Krumm, C.J.), in which the Court held that the debtors were entitled to deduct the full amount of the allowance for vehicle payments even if they owned the vehicle free and clear of any liens. The Debtors in this case, then, are entitled to deduct the full amounts allowed under the IRS National and Local Standards.

Under the National Standards, the Debtors have properly deducted $1,105.00. Under the Local Standards, they have deducted the correct statutory amount of $1,748.00. The Debtors'

---

[15] See In re Swan, 368 B.R. 12 (Bankr. N.D.Cal. 1007) and discussion therein in which the court identifies seven different rationales used by courts to justify their holdings regarding IRS Standards. They are: (1) the "Plain Meaning" Rationale; (2) the "Applicable v. Actual " Rationale; (3) the Unfair Results Rationale; (4) the Efficiency Rationale; (5) the "Ownership/Liability" Distinction Rationale; (6) the Policy Rationale; and (7) the Reliance on IRS Materials Rationale. These rationales are not mutually exclusive and that courts frequently rely on combinations thereof.

[16] See, e.g., In re McGillis, 370 B.R. 720 (Bankr. W.D.Mich.2007); and In re Rezentes, 368 B.R. 55 (Bankr. D.Haw.2007);

[17] See, e.g. In re Osei, 389 B.R. 339 (Bankr. S.D.N.Y.2008); In re Egbert, 384 B.R. 818 (Bankr. E.D.Ark.2008); In re Phillips, 382 B.R. 153 (Bankr. D.Mass.2008); In re Morgan, 374 B.R. 353 (Bankr. S.D.Fla.2007); In re Briscoe, 374 B.R. 1 (Bankr. D.D.C.2007); In re Swan, 368 B.R. 12 (Bankr. N.D.Cal.2007); In re Naslund, 359 B.R. 781 (Bankr.D.Mont.2006);and In re Farrar-Johnson, 353 B.R. 224 (Bankr.N.D.Ill.2006)

IRS National Standard and Local Standard Deductions total $2,853.00.

        2.     IRS Other Necessary Expenses.

The Debtors may deduct "actual monthly expenses for categories specified as Other Necessary Expenses issued by the Internal Revenue Service." 11 U.S.C. § 707b)(2)(A)(ii)(I). These amounts are to be determined by the actual amount of the monthly expense for each item. See Hylton. The Debtors have properly listed $1,940.73 for taxes under this category.

        3.     Additional Statutory Expenses.

The Debtors are permitted to deduct certain other expenses under 11 U.S.C. § 707b)(2)(A)(ii)(II)-(V). The Debtors have deducted $168.45 for insurance per month and $50.00 per month for charitable contributions for a total of $218.45 per month under this category. The United States trustee asserts the allowed amount should be $203.45 per month. For purposes of this motion, these expenses shall be allowed in the amount of $203.45.

        4.     Payments Toward Secured Debt

The Debtors are permitted to deduct payments toward secured debt. 11 U.S.C. § 707b)(2)(A)(iii). The Debtors may deduct the sum of the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition divided by sixty. The Debtor deducted $2,321.00 for mortgage payments. The United States trustee does not dispute this amount.

        5.     Payments toward priority claims.

The Debtors are permitted to deduct payments toward debt constituting priority claims. 11 U.S.C. § 707b)(2)(A)(iv). The Debtors may deduct each month the sum of the total of all

amounts scheduled as due based on priority claims divided by sixty. The Debtors deducted no amount under this category.

    C.    Calculating the Debtor's Disposable Income.

The Debtors' income for purposes of determining disposable income if the Debtors were prosecuting this case under chapter 13 would be negative. The amounts that they would be allowed to deduct from their gross income would be:

| | |
|---|---|
| IRS Local and National Standards: | $ 2,853.00 |
| IRS Other Necessary Expenses | $ 1,337.48 |
| Additional Statutory Expenses | $ 203.45 |
| Payments toward Secured debt | $ 2,321.00 |
| Payments toward Priority Claims: | $ 00.00 |
| Total Deductions: | $ 6,714.93 |

For purposes of the chapter 13 disposable income test, the Debtors' projected monthly income ($6,538.29) is less than their projected monthly deductions. Consequently, they would not be required by the disposable income test to make any payments in chapter 13.[18] The Debtors' prosecution of this Chapter 7 case is not an abuse of Chapter 7 under the Financial Situation Test.

## *Conclusion*

It would not be an abuse of the provisions of chapter 7 for the Debtors to prosecute this case under that chapter, even if the Debtors are not permitted to deduct expenses arising from student loan payments.

## **ORDER**

---

[18]     The Debtors also asserted monthly deductions for cable ($70.00), internet service ($75.05), recreation ($25.00), renters' insurance ($12.00), property taxes ($43.00), and visitation by Mr. Wagstaff to his daughter who lives in another state ($200.00). Because the motion will be denied, the Court need not consider whether these deductions are proper or are subsumed in other categories.

The motion of the United States trustee to dismiss this Chapter 7 case for abuse is denied.

Upon entry of this Memorandum the Clerk shall forward a copy to the United States trustee, the chapter 7 trustee, and Mitchell Garbee, Esq., counsel for the Debtors.

Entered on this  20th  day of August, 2010.

William E. Anderson
United States Bankruptcy Judge